COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| TEXAS BUILDERS INSURANCE | | No. 08-07-00200-CV |
| COMPANY, | § | |
| | | Appeal from |
| Appellant, | § | |
| | | 355th District Court |
| v. | § | |
| | | of Hood County, Texas |
| CALVIN MOLDER, | § | |
| | | (TC # C2005394) |
| Appellee. | § | |

## O P I N I O N

Texas Builders Insurance Company appeals from a summary judgment affirming a decision by the Texas Workers' Compensation Commission Appeals Panel[1] in favor of Calvin Molder. Molder suffered an on-the-job injury to his right shoulder on March 12, 2001 as he worked beneath a bulldozer and the bulldozer pan fell on him. Molder subsequently filed a claim for workers' compensation benefits. Texas Builders Insurance (TBI) provides workers' compensation insurance coverage to Molder's employer, Buzzard Roost Construction. On April 23, 2001, Stephen L. Hall, D.O., performed arthroscopic surgery on Molder's shoulder and repaired a small full-thickness rotator cuff tear, debrided the glenoid labrum, and performed a subacromial decompression. Dr. Hall noted that the lateral acromion and AC joint had significant spurring which probably led to the rotator cuff tear. Molder continued to have problems with the shoulder and Dr. Hall performed a second surgery on September 12, 2001 for what he termed a "recurrent rotator cuff tear." He

---

[1] The Texas Workers' Compensation Commission is now known as the Texas Department of Insurance, Division of Workers' Compensation. TEX. LAB.CODE ANN. § 402.001(b)(Vernon 2006).

repaired a large rotator cuff tear and again debrided the glenoid labrum. Because Molder continued to suffer from shoulder pain, Dr. Hall referred him to John Sklar, M.D., a pain management doctor. Karl Erwin, M.D., the TWCC designated doctor, examined Molder on May 13, 2002 and determined that he had reached maximum medical improvement (MMI) on that date with a 2% impairment rating (IR).

On September 15, 2002, Molder felt his shoulder pop while lifting his arm over his head to remove his shirt. In significant pain, Molder went to an emergency room where he was diagnosed with incision site opening and an acute shoulder sprain/strain. Molder was instructed to return to Dr. Hall for examination. Dr. Hall determined that all of Molder's pathology was related to the March 12, 2001 injury. On November 19, 2002, TBI disputed compensability based on its claim that Molder had sustained a new injury. The dispute was submitted to TWCC for resolution and a contested case hearing was held on May 21, 2003. The evidence submitted to the Hearing Officer included the records of Drs. Hall and Sklar. Dr. Hall wrote a letter to Dr. Sklar on January 28, 2003 advising him that Molder continued to have shoulder pain and questioned whether Molder had suffered a new injury or aggravated the injured shoulder. Dr. Hall informed Dr. Sklar that he believed all of Molder's shoulder pain stemmed from the initial injury and recommended that Molder seek a second opinion. Like Dr. Hall, Dr. Sklar concluded that Molder's current shoulder problems were related to the original injury. More specifically, he commented: "The way I would explain the current episode is that possibly the previous surgical repair had left his shoulder inheritably (sic) weak and now something has come loose or torn again in his shoulder." Dr. Sklar concluded that Molder had not reached MMI and the prior determination of MMI should be rescinded. On July 29, 2003, the Hearing Officer determined that Molder had suffered a compensable injury to his right shoulder on March 12, 2001 and the strain which occurred on

September 15, 2002 was caused by or was the result of the compensable injury. The Hearing Officer specifically found that "[t]he March 12, 2001 compensable injury includes the condition of the Claimant's right shoulder after September 15, 2002." Consequently, the Worker's Compensation Commission ordered TBI to pay benefits to Molder. TBI did not appeal this decision.[2]

At some point prior to January 28, 2003, Molder became dissatisfied with Dr. Hall,[3] and he sought a second opinion from John Conway, M.D., an orthopedic surgeon, on March 2, 2004. On May 5, 2004, Molder had a third and final surgery. Dr. Conway performed extensive glenohumeral debridement and repaired a full thickness tear of the supraspinatus rotator cuff and a tear of the infraspinatus rotator cuff. He also performed subacromial decompression with extensive resection of subacromal, subdeltoid, subclavicular and subcoracoid fibrosis.

In July 2004, TWCC's benefit review officer submitted a letter of clarification to Dr. Erwin requesting that he reconsider the MMI date and IR based on the medical reports submitted to him, including Dr. Conway's operative report. Dr. Erwin stood by his previous findings, concluding that Dr. Conway's findings could not have been present during the May 13, 2002 examination. Dr. Erwin concluded that the new pathology was the result of Molder's usual or customary daily activities. The benefit review officer sent a second letter to Dr. Erwin stating that "the new tear of the infraspinatus tendon and the supraspinatus tendon are a direct result of the initial 3-12-01 injury and as such, are subject to a reconsideration of the maximum medical improvement date and impairment rating." The letter further advised Dr. Erwin that "[c]ompensability or whether the

---

[2] A decision of a Hearing Officer regarding benefits is final in the absence of a timely appeal by a party and is binding during the pendency of an appeal to the appeals panel. TEX.LAB.CODE ANN. § 410.169 (Vernon 2006).

[3] Molder testified at the May 21, 2003 hearing that he and Dr. Hall had parted acrimoniously and he was no longer receiving treatment from him. Dr. Hall noted in a letter to Dr. Sklar dated January 28, 2003 that he was no longer treating Molder.

continued problems resulted from activities of daily living[4] is not a consideration." Dr. Erwin again refused to reconsider the MMI date and IR. Consequently, the benefit review officer designated a new doctor, Daniel Foster, D.O., to assess MMI and IR. Dr. Foster examined Molder on February 8, 2005 and reviewed the relevant medical reports. He determined that Molder reached MMI on March 20, 2003 with a 16% IR.

TWCC later sent Dr. Foster a letter of clarification with a peer review report from Dr. Brian Buck who concluded that Dr. Foster's IR had not been done in accordance with the AMA Guides to the Evaluation of Permanent Impairment, 4th edition, because Dr. Foster had based the IR on Molder's condition after the third surgery rather than at the time of Molder reached statutory MMI. Dr. Buck also took issue with Dr. Foster's failure to round up the range of motion number for shoulder flexion resulting in a 7% upper extremity impairment rating rather than the 8% impairment rating found by Dr. Foster. Dr. Foster reviewed Dr. Buck's report and concluded that it did not change his opinion on the MMI date and IR.

On May 19, 2005, a contested case hearing was held to determine when Molder reached maximum medical improvement, his impairment rating, and whether Dr. Foster had been properly appointed as the designated doctor in accordance with Section 408.0041 of the Texas Labor Code and TWCC Rule 130.5. In a decision filed on August 1, 2005, the Hearing Officer found that Molder reached statutory MMI on March 17, 2003[5] with a 16% IR as certified by Dr. Foster. The Hearing Officer also found that Dr. Foster was properly appointed. The Appeals Panel determined that the Hearing Officer's decision was the final decision because it would otherwise be affirmed.

---

[4] At oral argument, Molder's attorney advised us that reference to "activities of daily living" is "Code-speak" for injuries that are not incurred in the course and scope of employment.

[5] The parties stipulated that March 17, 2003 is the statutory MMI date pursuant to TEX.LAB.CODE ANN. § 401.011.

Consequently, it became final on August 1, 2005.

During the appeals process, Molder filed claims for supplemental income benefits (SIBs). On December 13, 2005, a contested case hearing was held to determine whether Molder was entitled to supplemental income benefits for the first through eighth quarters. TBI asserted that the applications for the second through seventh quarters had not been timely filed. Additionally, it argued that Molder was not entitled to SIBs for the first through eighth quarters because he failed to show he had no ability to work. In a decision filed on December 15, 2005, the Hearing Officer found that Molder was entitled to SIBs for the first through eighth quarters and he was unemployed as a direct result of the impairment from the compensable injury. On March 17, 2006, the Appeals Panel sent notice that the Hearing Officer's decision became final on that same date.

On September 9, 2005, TBI filed suit in the district court seeking judicial review of the Appeals Panel's August 1, 2005 decision. It also filed suit seeking judicial review of the Appeals Panel's March 17, 2006 decision. The trial court consolidated the cases and they proceeded under a single cause number. Molder filed a motion for traditional and no evidence summary judgment on all of the issues presented by TBI. TBI also filed a motion for summary judgment. The trial court granted Molder's motion for summary judgment and TBI filed notice of appeal.[6]

## APPLICABLE LAW
## AND STANDARD OF REVIEW

The dispositive issues in this appeal are whether Dr. Foster was properly appointed as the second designated doctor and whether the IR certified by Dr. Foster is valid. To determine the impairment rating, the certifying doctor evaluates the permanent effect of the employee's injury

---

[6] The Supreme Court of Texas entered a docket equalization order transferring this appeal from the Second Court of Appeals to the Eighth Court of Appeals. *See* TEX.GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX.R.APP.P. 41.3.

according to statutory guidelines. TEX.LAB.CODE ANN. § 408.124; *Rodriguez v. Service Lloyds Insurance Company*, 997 S.W.2d 248, 253 (Tex. 1999). The impairment rating represents the percentage of permanent impairment to the whole body. TEX.LAB.CODE ANN. § 401.011 (Vernon Supp. 2009); *Rodriguez*, 997 S.W.2d at 253.

An injured worker qualifying for impairment income benefits receives seventy percent of his average weekly wage. TEX.LAB.CODE ANN. § 408.126. These benefits are available from the date MMI is certified and continue for three weeks for every percentage point of impairment. TEX.LAB.CODE ANN. § 408.121(a); *Fulton v. Associated Indemnity Corporation*, 46 S.W.3d 364, 366 (Tex.App.--Austin 2001, pet. denied). If the impairment rating is fifteen percent or greater, the employee may qualify for supplemental income benefits which provide long-term disability compensation. TEX.LAB.CODE ANN. § 408.142(a); *Fulton*, 46 S.W.3d at 366. Medical benefits are not dependent on the impairment rating. *See* TEX.LAB.CODE ANN. § 408.021(a); *Fulton*, 46 S.W.3d at 366.

The Labor Code provides for a modified *de novo* review of an appeals panel's decision on issues of compensability, eligibility, or the amount of income or death benefits. *National Liability & Fire Insurance Company v. Allen*, 15 S.W.3d 525, 528 (Tex. 2000); *see* TEX.LAB.CODE ANN. § 410.301(a). Modified *de novo* review means: (1) the trial court is informed of the TWCC Appeals Panel's decision; (2) evidence of the extent of impairment is limited to that presented to the TWCC, unless the court makes a threshold finding that the claimant's condition has substantially changed; and (3) the court is required to adopt the specific impairment rating arrived at by one of the physicians in the case. TEX. LAB.CODE ANN. §§ 410.304, 410.306-.307; *Texas Workers' Compensation Commission v. Garcia*, 893 S.W.2d 504, 528 (Tex. 1995). The party appealing the decision on an issue described in Section 410.301(a) has the burden of proof by a preponderance of

the evidence.  TEX.LAB.CODE ANN. § 410.303.

A trial court is limited to reviewing only those issues decided by the appeals panel and upon which judicial review is sought.  TEX.LAB.CODE ANN. § 410.302(b).  TBI's petition challenged the Appeals Panel's determination that:  (1) Dr. Daniel Foster was properly appointed as the designated doctor; (2) Molder reached statutory maximum medical improvement on March 17, 2003; (3) Molder's impairment rating is 16% as certified by Dr. Foster; (4) Molder was entitled to SIBs for the first through eighth quarters; and (5) TBI was not relieved of liability for SIBs due to Molder's failure to timely file an application for supplemental income benefits for the first through seventh quarters.  Molder sought summary judgment on all of these issues.  TBI's motion for summary judgment was based on three grounds:  (1) Dr. Foster was improperly appointed as the second designated doctor, and therefore, his MMI date and IR should not be considered; (2) Dr. Erwin properly determined the MMI date as March 13, 2002 and the IR as 2%; and (3) Molder is not entitled to supplemental income benefits because his IR does not exceed 15%.

We review all summary judgments *de novo*.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  The standard for reviewing a traditional summary judgment is well established:  (1) the movant must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether a disputed issue of material fact exists that would preclude summary judgment, we take all evidence favorable to the non-movant as true; and (3) we indulge every reasonable inference and resolve any doubts in favor of the non-movant.  *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548-49 (Tex.1985).  When competing motions for summary judgment are filed and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented.  *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868,

872 (Tex. 2000).

## APPOINTMENT OF THE
## SECOND DESIGNATED DOCTOR

In its petition, TBI challenged the Division's determination that Dr. Foster was properly appointed as the second designated doctor. Both parties sought traditional summary judgment on this ground. In Issues One and Two, TBI contends that Dr. Foster was improperly appointed, and therefore, his determinations as to the date of maximum medical improvement and impairment rating are invalid and should not have been considered by the Division or the district court.

Section 408.0041(a) provides that at the request of an insurance carrier or an employee or on the commissioner's own order, the commissioner may order a medical examination to resolve any question about: (1) the impairment caused by a compensable injury; (2) the attainment of maximum medical improvement; (3) the extent of the employee's compensable injury; (4) whether the injured employee's disability is a direct result of the work-related injury; (5) the ability of the employee to return to work; or (6) issues similar to those listed in (a)(1) through (a)(5). TEX.LAB.CODE ANN. § 408.0041(a)(Vernon Supp. 2009). A medical examination requested under Subsection (a) must be performed by the next available doctor on the Division's list of designated doctors whose credentials are appropriate for the issue in question. TEX.LAB.CODE ANN. § 408.0041(b). In a case where the Division has previously assigned a designated doctor, the Division's rules require that it use the same doctor again provided the doctor is still qualified and available. 28 TEX.ADMIN.CODE § 126.7(h)(Rule 126.7(h)).[7] Otherwise, the Division shall select the next available doctor on its designated doctor list. *Id.* The Workers' Compensation Appeals Panel has held that a second doctor

---

[7] Former Rule 130.5(d)(2) provided the same as Rule 126.7(h). The Appeals Panel based its decision on former Rule 130.5(d)(2) and the parties cited that rule in their briefs. Rule 126.7(h) became effective while the case was pending in the district court. Therefore, we cite to the current version of the rule.

is appropriate only in those cases where the first designated doctor is unable or unwilling to comply with the required AMA Guides or requests from the Commission for clarification. *See* Texas Workers' Compensation Commission Appeal No. 022492 (November 13, 2002); Texas Workers' Compensation Commission Appeal No. 011607 (August 28, 2001).

TBI states its argument in terms of the district court having abused its discretion but the issue properly framed is whether the movant showed there is no genuine issue of material fact and he is entitled to summary judgment as a matter of law. It is undisputed that the Division sent two requests to Dr. Erwin to reconsider the MMI and IR because the condition of Molder's shoulder had changed after the clinical MMI date and he had required additional shoulder surgery. The first issue we must address is whether the Division's requests for clarification were appropriate. If they were not, Dr. Erwin was correct in refusing to reconsider the MMI date and IR and Molder was not entitled to summary judgment on this issue.

After an employee has been certified by a doctor as having reached maximum medical improvement, the certifying doctor is required to evaluate the condition of the employee and assign an impairment rating using the impairment rating guidelines described by Section 408.124. TEX.LAB.CODE ANN. § 408.123(a)(Vernon 2006). MMI must be certified before an impairment rating is assigned. 28 TEX.ADMIN.CODE § 130.1(b)(2)(Rule 130.1(b)(2)). According to Rule 130.1(b)(1), maximum medical improvement or MMI is:

> (A) the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated;
>
> (B) the expiration of 104 weeks from the date on which income benefits begin to accrue; or

(C)  the date determined as provided by Texas Labor Code § 408.104.[8]

28 TEX.ADMIN.CODE § 130.1(b)(1)(Rule 130.1(b)(1)).

MMI under (b)(1)(A) is referred to as clinical MMI while MMI under (b)(1)(B) is referred to as statutory MMI.  In certifying MMI, the doctor reviews medical records, performs a complete medical examination for the purpose of determining MMI, and assigns a specific MMI date.  28 TEX.ADMIN.CODE § 130.1(b)(4)(Rule 130.1(b)(4)).  The impairment rating for the current compensable injury must be based on the employee's condition as of the MMI date considering the medical record and the certifying examination.  28 TEX.ADMIN.CODE § 130.1(c)(3).  The preamble of Rule 130.1(c)(3) clarifies that the IR must be based on the injured worker's condition as of the date of MMI and should not be based on changes in the injured employee's condition occurring after that date, such as when the injured employee's condition changes as a result of surgery that takes place after the date of MMI.  *See* Texas Worker's Compensation Commission Appeal No.072242 (February 13, 2008)(discussing Rule 130.1(c)(3)).  In response to public comment on Rule 130.1, the Division, in the preamble, has noted that where the claimant reaches MMI clinically, rather than with the expiration of 104 weeks or the extended date in the event of spinal surgery, future changes in the injured worker's condition may cause the MMI date to change and that "[i]n the event the MMI date is changed due to a post-MMI change in the injured employee's conditions, there should be a re-evaluation of the IR as of the new MMI date."  Texas Worker's Compensation Commission Appeal No.072242 (February 13, 2008)(quoting the preamble); Texas Workers' Compensation Commission Appeal No. 040313-s (April 5, 2004).  Furthermore, the designated doctor is required to rate the entire compensable injury.   Texas Workers' Compensation Commission Appeal No. 951158 (August 21, 1995).

---

[8]  Section 408.104 pertains to MMI after spinal surgery.

Dr. Erwin initially determined the clinical MMI date to be May 13, 2002 with a 2% impairment rating. The summary judgment evidence established that on September 15, 2002, Molder suffered what was diagnosed at the time as an acute right shoulder strain/sprain and incision site opening. A dispute arose as to the extent of Molder's injury and on July 29, 2003, a Hearing Officer determined that the shoulder strain suffered on September 15, 2002 was caused by or was the result of the compensable injury which occurred on March 12, 2001. The Hearing Officer concluded that "[t]he March 12, 2001 compensable injury includes the condition of [Molder's] right shoulder after September 15, 2002." TBI did not appeal this decision and it became final. In May 2004, Molder had a third surgery on the shoulder because the two prior surgeries had failed. Given the post-MMI change in Molder's condition, the benefit review officer correctly informed Dr. Erwin that the MMI date and IR should be reconsidered. Dr. Erwin flatly refused to do so. The Division acted properly by appointing a second designated doctor to determine Molder's MMI date and IR pursuant to Rule 130.1(c)(3). *See* Texas Workers' Compensation Commission Appeal No.043168 (January 20, 2005)(where the designated doctor refused to rate the compensable thoracic injury because he did not believe it was part of the compensable injury, the Appeals Panel held that when a designated doctor refuses to provide an IR for the compensable injury based on the designated doctor's opinion that the claimant does not have a compensable injury, one of the remedies is to appoint another designated doctor). The trial court properly granted summary judgment in favor of Molder and against TBI on this issue.

## MAXIMUM MEDICAL IMPROVEMENT

TBI does not raise a specific issue on appeal challenging the portion of the summary judgment finding that Molder reached statutory maximum medical improvement on March 17, 2003. At best, TBI's brief can be construed as asserting that Dr. Foster's MMI certification is invalid

because he was improperly appointed as the second designated doctor. Because we have upheld the appointment of Dr. Foster and TBI has not raised any other argument pertinent to the MMI certification, we affirm the portion of the summary judgment finding that Molder reached statutory maximum medical improvement on March 17, 2003.

## IMPAIRMENT RATING

In its petition, TBI challenged the Division's determination that the IR is 16% as certified by Dr. Foster. TBI based its argument in part on its claim addressed in Issue One that Dr. Foster was improperly appointed as the second designated doctor. Because we have rejected that argument, the related contention is without merit.

TBI argues alternatively that even if Dr. Foster was properly appointed, his IR certification is erroneous because it is based on Molder's condition after the statutory MMI date of March 17, 2003, and includes the May 2004 surgery. TBI contends that Dr. Foster should have limited his evaluation of Molder to the first two surgeries and the strain which occurred on September 15, 2002. TBI also asserts that Dr. Erwin's 2% IR should have been adopted. The trial court granted Molder's motion for summary judgment on the ground that Dr. Foster's 16% IR certification is valid.

As discussed above, Rule 130.1(c)(3) requires that assignment of an impairment rating for the current compensable injury be based on the injured employee's condition as of the MMI date considering the medical record and the certifying examination. 28 TEX.ADMIN.CODE § 130.1(c)(3). The Division has interpreted Rule 130.1(c)(3) to mean that the IR cannot be based on changes occurring after the MMI date, including surgery. *See e.g.,* Texas Workers' Compensation Commission Appeal No. 042230 (November 1, 2004); Texas Workers' Compensation Commission Appeal No. 042270 (November 2, 2004); Texas Workers' Compensation Commission Appeal No. 042405 (November 17, 2004). Where, as here, a new MMI date is certified due to a post-MMI

change in the employee's condition, there must be a reevaluation of the IR as of the new MMI date. Because TBI denied treatment for the September 15, 2002 injury, it was necessary for the Commission to resolve the extent of injury at a contested case hearing, and on July 29, 2003, the Hearing Officer rendered a decision on that issue. Thus, the extent of injury issue was not resolved until several months after the statutory MMI date of March 17, 2003. Molder was not examined by a doctor qualified to certify IR on, or even near, the statutory MMI date.

We first consider TBI's argument that the IR must be based only on the two prior surgeries and the "sprain" which occurred on September 15, 2002. TBI seeks to invalidate the 16% IR because Dr. Foster purportedly considered the rotator cuff tears diagnosed and repaired after September 15, 2002. This contention is without merit because the IR must be based on Molder's *condition* as of the statutory MMI date. The certifying doctor is required to rate the entire compensable injury based on the examination and the medical evidence before the doctor. Whether Molder's shoulder condition on March 17, 2003 included the two rotator cuff tears which were subsequently diagnosed and surgically repaired in 2004 is an issue left to the medical judgment of the designated doctor. The 16% IR is therefore not invalid merely because Dr. Foster considered Molder's condition after September 15, 2002.

However, Dr. Foster's report reflects that in assessing a 16% IR, he considered impairment from Molder's third shoulder surgery which occurred after the statutory MMI date. In addition to assessing an impairment rating of 18% for Molder's decreased range of motion (ROM), Dr. Foster added 10% for the distal clavicle resection performed as part of the third surgery for a combined whole body IR of 16%. Because the 16% IR is based, at least in part, on the surgery which occurred

after the statutory MMI date, the IR violates the Division's interpretation of Rule 130.1(c)(3).[9]

Molder was not entitled to summary judgment that his IR is 16% as certified by Dr. Foster. But TBI was not entitled to summary judgment that Dr. Erwin's 2% IR is correct. Dr. Erwin's IR is invalid because it was made four months before Molder aggravated the shoulder on September 15, 2002, and ten months before the statutory MMI date. Dr. Erwin's 2% IR assessment is not based on Molder's condition on March 17, 2003 and thus it violates Rule 130.1(c)(3).

We overrule Issue One in its entirety. We overrule that portion of Issue Two in which TBI argued that Dr. Erwin's 2% IR should have been adopted. We sustain Issue Two in part based on our conclusion that Molder was not entitled to summary judgment that his IR is 16% as certified by Dr. Foster. Our ruling requires that the case be remanded to the Division for reconsideration of the IR as of the statutory MMI date. We recognize that it will be difficult for the designated doctor to assess the IR as of the statutory MMI date because the doctor did not examine Molder at that time. The Division has also conceded the inherent difficulty in requiring doctors to certify IR under these circumstances, but in TWCC Appeal No. 041413 (July 30, 2004), the Division sanctioned a procedure for assessing IR after the statutory MMI date. In that case, the claimant had back surgery after the statutory MMI date and the designated doctor made the IR certification post-surgery. The certifying doctor submitted two impairment ratings. First, using the statutory MMI date, "Dr. A" assessed a 7% IR based on Table 49(II)(C) of the Guides for an unoperated disc with medically

---

[9] The Division has rejected an argument that Rule 130.1(c)(3) should not be strictly applied where the carrier delays or denies diagnostic testing with the result that surgery occurred after the statutory MMI date. TWCC Appeal No. 042230 (November 1, 2004). The Appeals Panel found that Rule 130.1(c)(3) contained no exception based on delay caused by the carrier and concluded that the surgery for the compensable injury could not be taken into account in determining the IR. In a concurring opinion, one of the Appeals Panel judges questioned the fairness of strict application of Rule 130.1(c)(3) in a case where the carrier caused the delay. TWCC Appeal No. 042230 (J. Gary L. Kilgore, concurring). Noting that the claimant could potentially receive a lower IR if the carrier delayed the claimant's surgery beyond the statutory MMI date, Judge Gilmore expressed concern that such an application of the rule could promote gamesmanship. Because Molder prevailed in the proceedings below, this issue has not been developed and is not ripe for our review in this appeal.

documented injury. Dr. A noted that he could not provide any impairment based on loss of range or motion or neurological deficits because he had not examined the patient on the statutory MMI date. Second, Dr. A provided an alternate IR based on the findings of his examination and assessed an IR based on Table 49(II)(F) multiple operative levels, with or without residual symptomatology (12%), and impairment for loss of ROM (14%), and loss of sensation in the S1 nerve root (2%) combined for a whole person IR of 26%. The Appeals Panel concluded that the 26% IR violated Rule 130.1(c)(3) because it considered impairment from the claimant's surgery which occurred after the statutory MMI date. The Appeals Panel also noted that the 7% IR failed to consider ROM. In calculating the correct IR, the Appeals Panel took components from each of the two impairment ratings submitted by the doctor. It took the 7% impairment rating for a specific disorder under Table 49(II)(C) and combined it with the 14% impairment for loss of ROM and the 2% impairment for loss of sensation in the S1 nerve root for a combined whole person IR of 22%. We do not have the components necessary to calculate the IR.

## SUPPLEMENTAL INCOME BENEFITS

In Issue Three, TBI raises several arguments challenging Molder's eligibility for supplemental income benefits. We have found, however, that the 16% IR certified by Dr. Foster is invalid because it takes into consideration the third shoulder surgery which occurred after the statutory MMI date. It cannot be determined whether Molder is qualified for SIBs until the IR issued is resolved on remand. It is therefore unnecessary to address TBI's arguments about the SIBs.

## CONCLUSION

Having overruled Issue One, we affirm the portion of the summary judgment finding that Dr. Foster was properly appointed as the second designated doctor. We also affirm the portion of the summary judgment finding that Molder reached statutory maximum medical improvement on

March 17, 2003. Having sustained Issue Two in part, we reverse the portion of the summary judgment finding that Molder's IR is 16% as certified by Dr. Foster. In the absence of a valid IR of 15% or greater, the portion of the summary judgment finding Molder is entitled to SIBs for the first through eighth quarters must also be reversed. Ordinarily, we would remand the case to the trial court for further proceedings but there are no other issues for the district court to resolve. We therefore remand the case to the Texas Department of Insurance, Division of Workers' Compensation, for the designated doctor to reassess Molder's impairment rating as of the statutory MMI date as required by Rule 130.1(c)(3) and for further proceedings consistent with this opinion.

October 30, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.