COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| TEXAS MUTUAL INSURANCE COMPANY, | § | |
| | § | No. 08-15-00075-CV |
| Appellant, | § | Appeal from the |
| | § | 34th District Court |
| v. | § | |
| MARIA GARCIA and ANTHONY GARCIA, | § | of El Paso County, Texas |
| | § | (TC# 2005-6345) |
| Appellees. | § | |

# **O P I N I O N**

In this administrative appeal, Texas Mutual Insurance Company challenges a trial court's modified *de novo* determination that the insurance company improperly suspended the payment of death benefits to a claimant before a purported settlement agreement between the claimant and an alleged third-party tortfeasor could be fully funded.

We will affirm the judgment of the trial court.

## BACKGROUND

In October 2000, Manny Garcia suffered a fatal on-the-job injury and died. His employer, Alamito Construction Company, was a worker's compensation subscriber. Following Manny Garcia's death, Alamito's carrier, Texas Mutual, began paying death benefits to Garcia's widow and then-minor child.

Later, the Garcias (including Manny's two adult sons who were not entitled to death benefits from Texas Mutual) filed a third-party action against Hansen Construction Company, alleging Hansen was responsible for Manny's death (the Hansen Suit). On August 16, 2004, Hansen's counsel sent counsel for the Garcias the following letter:

Dear Mr. Scherr:

I write to confirm our telephone conversation of August 16, 2004, wherein your clients have agreed to accept a settlement offer in the following amounts in exchange for a full end final release of all claims in the above-referenced case:

| | |
|---|---|
| Maria Garcia | $35,000.00 |
| Anthony Garcia | $15,000.00 |
| Jorge Garcia | $375,000.00 |
| Juan Manuel Garcia | $375,000.00 |

Further, the plaintiffs must satisfy and my client must be fully and completely indemnified from any and all medical expenses, third party claims, or other liens or claims arising from this incident. This letter will serve as our interim agreement until we can execute a formal release and dismissal. Once I receive the settlement checks, I will forward them to your attention along with the appropriate settlement documents for your clients' signatures.

If my understanding is correct, please sign in the space provided below and return to me. If my understanding is incorrect, please advise me immediately.

Counsel for the Garcias signed the letter. But before the interim agreement could be funded or paid, Texas Mutual suspended the payment of death benefits to the eligible Garcias and intervened in the Hansen Suit to assert a right to reimbursement from any third-party settlement funds. Litigation in the Hansen Suit continued; Texas Mutual, Hansen, and the Garcias entered mediation; the Garcias made concessions to Texas Mutual regarding amounts to be assigned to Texas Mutual for reimbursement purposes and future credits; and eventually Hansen distributed funds to Texas Mutual and the Garcias on August 19, 2005. All parties agree that the offset was exhausted in November 2011, and that Texas Mutual has resumed paying some benefits.

However, while the Hansen Suit was still pending, the Garcias challenged Texas Mutual's

2

suspension of death benefits in an administrative proceeding before the Division of Worker's Compensation (DWC). The DWC addressed four questions, with the final three questions being added at the request of Texas Mutual:

- Is the Carrier entitled to suspend the beneficiaries' benefits to offset a third-party recovery?

- On what date did Maria Garcia and Anthony Garcia recover a third party settlement?

- What were the correct accrued benefits paid by Texas Mutual on the date of the third party settlement per Texas Labor Code Section 417.002(a)?

- Because of the third party settlement recovery, if any, what is the correct amount of the advance on future benefits per Texas Labor Code Section 417.002(b)?

DWC sided with Texas Mutual, holding that the insurance company properly suspended death benefit payments beginning on the date the Garcias signed the interim agreement with Hansen. The district court sitting on appeal disagreed, finding that Texas Mutual could not have properly suspended payment of death benefits until a later date when the Hansen litigation settlement was actually paid and rendering summary judgment accordingly.

This appeal followed.

**DISCUSSION**

In Issues One and Two, Texas Mutual asks this Court to determine whether the Garcias "recovered" from a third party on August 16, 2004 (the date the Garcias signed the purported settlement agreement with Hansen) or on August 19, 2005 (the date Texas Mutual and the Garcias received their checks from Hansen). In Issue Three, Texas Mutual asserts in the alternative that the district court lacked jurisdiction or authority to render a judgment awarding the Garcias damages and interest.

We agree with the district court's decision. Texas Mutual had a duty to continue paying

3

death benefits unless and until the Garcias recovered money in the Hansen Suit. Nothing barred the district court from awarding damages and interest based on its calculation of the correct date of recovery.

### *Standard of Review*

A district court reviews a DWC appeal under a modified *de novo* standard of review. *Tex. Builders Ins. Co v. Molder*, 311 S.W.3d 513, 518 (Tex.App.—El Paso 2009, no pet.). A district court trial from a DWC decision is "limited to issues decided by the appeals panel and on which judicial review is sought." TEX.LAB.CODE ANN. § 410.302. The appealing party has the burden of proof by a preponderance of the evidence. TEX.LAB.CODE ANN. § 410.303.

### *Date of Third-Party Recovery*

We begin by determining when the third-party recovery occurred for purposes of the Section 417.002 suspension provision.

Under the Worker's Compensation Act, injured workers and their statutory beneficiaries may recover money for compensable injuries from either their employer's worker's compensation carrier or from a third-party tortfeasor. TEX.LAB.CODE ANN. § 417.001(a). However, if an injured worker accepts worker's compensation benefits from the carrier and then elects to recover money from a third-party tortfeasor, "the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary." TEX.LAB.CODE ANN. § 417.001(b). "If the recovery" against a third party exceeds the insurance carrier's subrogation interest, the insurance carrier shall (1) "reimburse itself and pay the costs from the amount recovered," and (2) "pay the remainder of the amount recovered to the injured employee or the legal beneficiary." TEX.LAB.CODE ANN. §§ 417.001(b)(1)-(2). "Any amount recovered that exceeds the amount of the reimbursement required . . . shall be treated

4

as an advance against future benefits, including medical benefits, that the claimant is entitled to receive under the subtitle." TEX.LAB.CODE ANN. § 417.002(b).

At issue in this case is one central question: what constitutes a "recovery" sufficient to suspend benefits under Section 417.002?

Texas Mutual insists that because recovery is undefined in the Labor Code, we must defer to the DWC's administrative interpretation of the statute. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011)(courts defer to agency's interpretation of a statute when there is "vagueness, ambiguity, or room for policy determinations" in the statute, unless that interpretation is "plainly erroneous or inconstant with the language of the statute"). And since the DWC determined that the Garcias "recovered" an award when they signed the interim agreement with Hansen even though the agreement was never funded and the terms of that agreement were never executed, that determination is dispositive in our interpretation of the relevant statutes. But we need only defer to an agency's interpretation of a statute if that statute is ambiguous. *See id*. Section 417.002, when read in the context of its sister provisions dealing with third-party liability, is not ambiguous. The statutory scheme is clear. We agree with the Garcias that recovery occurs for Section 417.002 benefit suspension purposes once monies are obtained from a third-party tortfeasor.

"We read statutes as cohesive texts; we do not cherry-pick words and phrases, read them in isolation, and then decide they alone represent the Legislature's intent while ignoring the proper context of those words and phrase." *Brazos Elec. Power Coop., Inc. v. Texas Comm'n on Envtl. Quality*, 538 S.W.3d 666, 685 (Tex.App.—El Paso 2017, pet. granted). "Harmonization of all statutory provisions in a way that is consistent with legislative intent is always our primary goal, if at all possible." *Id*. Particular words or phrases should in general "be interpreted consistently

5

in every part of an act." *Id*. at 692. As we have previously noted, the separate provisions of Chapter 417—all dealing with third-party liability—are best understood when read together in context. *See New Hampshire Ins. Co. v. Rodriguez*, -- S.W.3d --, No. 08-15-00173-CV, 2019 WL 168482, at *18 (Tex.App.—El Paso Jan. 11, 2019, pet. filed)("Sections 417.001(b) and 417.002 do no operate in vacuums . . . the two provisions are linked, and we must interpret them in light of each other."). When Chapter 417's provisions are read as a whole, it becomes clear that the Legislature intended for benefit payments to be suspended only upon the actual disbursement of sufficient funds from a third-party recovery.

Section 417.001(b), which defines the scope of the carrier's subrogation interest in a third-party liability situation, provides that *if* a "recovery" exceeds the insurance carrier's subrogation interest, the insurance carrier shall "reimburse itself and pay the costs from the amount recovered" and "pay the remainder of the amount recovered to the injured employee or the legal beneficiary." TEX.LAB.CODE ANN. § 417.001(b). In this context, it is clear that "recovery" refers to money actually received in the course of legal proceedings—common sense dictates that one cannot "reimburse" oneself or pay a "remainder" from uncollected money. Section 417.002 reaffirms that this is the proper reading of the statute by referring to an "amount recovered" in excess of reimbursement costs being treated as an advance against future benefits.

Texas Mutual cites several cases in support of its argument that for the purposes of suspending death benefits, recovery occurs upon the execution of an agreement with the third-party tortfeasor. Putting aside any potential statutory interpretation disagreements with our sister courts and accepting those cases' interpretations as being true for the sake of argument, those other cases are still distinguishable on their facts.

In *City of Garland v. Huston*, 702 S.W.2d 697, 700 (Tex.App.--Dallas 1985, writ ref'd

6

n.r.e.), minor children objected to the trial court releasing the City of Garland from the payment of future compensation benefits because they had not recovered actual money at the time of judgment. The Dallas Court of Appeals, citing Black's Law Dictionary definition of recovery as involving "the restoration or vindication of a right existing in a person[] by formal judgment or decree of a competent court," held there had been a "recovery" under the statute because the trial court's judgment vested the minors with the right to money from the City but delayed payments until a later date. *Id*. *City of Garland* is inapplicable here because that case involved a final judicial decision releasing the City from prospective future compensation benefits, not the signing of an interim agreement among parties that went unenforced at an intervenor-carrier's request combined with the carrier's unilateral suspension of current benefits pending a final *post hoc* administrative or judicial decision as to benefits status. Likewise, *American General Fire & Casualty Company v. McDonald*, 796 S.W.2d 201, 202-03 (Tex.App.--San Antonio 1990, writ denied) involved an arrangement similar to that in *City of Garland*: the trial court rendered a final judgment that provided for a minor child's future recovery of an amount held in safekeeping by the minor's mother. Because the child was vested with a future award by judicial decree, he received a "recovery" under the statute and the carrier was entitled to a determination of future credit and readjustment of prospective benefit obligations on remand. *Id.* at 204-05. Here, there was no final, enforceable judicial or administrative decree vesting the Garcias with a right of recovery from Hansen.[1] Absent such a formal decree, we rest on our determination that the statute requires actual disbursement of third-party funds before a carrier may be entitled to suspend payments. The third case Texas Mutual cites simply holds that when a worker settles a claim with a third party, the

---

[1] Texas Mutual maintains that notwithstanding in its intervention in the Hansen Suit in an attempt to defeat enforcement of the interim agreement as written, the interim agreement signed in the Hansen Suit was a nevertheless a fully enforceable and irrevocable Rule 11 agreement legally equivalent to a judgment.

7

carrier is subrogated to the rights of the worker in that third party litigation. *See Travelers Ins. Co. v. City of West Columbia*, 482 S.W.2d 53, 56 (Tex.App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.).

Finally, Texas Mutual complains that requiring a carrier to continue paying out benefits when a covered employee attempts to negotiate a third-party settlement that could potentially prevent the carrier from recovering first money is unjust. But the Labor Code imposes a statutory duty on carriers to continue paying benefits until the DWC resolves the controversy: "An insurance carrier shall continue to pay benefits promptly as and when the benefits accrue without a final decision, order, or other action of the commissioner, except as otherwise provided." TEX.LAB.CODE ANN. § 409.023. Additionally, carriers have a defined remedy in such situations. If the worker does recover from a third party without allowing the carrier to reimburse itself, the carrier can bring a conversion action directly against the worker. *See Tex. Mut. Ins. Co v. Ledbetter*, 251 S.W.3d 31, 38 (Tex. 2008).

We see nothing in the statutes that would prevent a carrier from later recouping benefits it believed were wrongly paid out pending a final DWC decision. As such, we will not read into the statutes the extratextual power of a carrier to unilaterally and without DWC pre-approval suspend benefit payments prior to the actual funding of a third-party recovery. Indeed, such a holding from this Court would essentially write Section 409.023's continuous-payment-pending-judicial-resolution requirement out of the Labor Code. Allowing a carrier to suspend death benefits before the outcome of third-party litigation is completed and a recovery funded in fact subverts the purposes of the Act, namely, to ensure both that beneficiaries receive benefits to which they are entitled from carriers and to allow carriers to mitigate insurance costs when beneficiaries recover amounts from third parties.

The DWC erred in determining that recovery occurred when the interim agreement was signed. We hold that in the absence of a formal judicial or administrative decree, recovery occurs once third-party funds are actually disbursed, at which point a carrier may suspend benefit payments if the conditions set out in Section 417.002 are otherwise met, i.e., the worker's post-reimbursement remainder recovery is sufficient to cover future expenses in whole (at which point benefit payments may cease entirely) or in part (at which point the carrier may treat the award as an advance against future benefits until the amount of the award is exhausted).

Issues One and Two are overruled.

### *Damages and Interest*

In Issue Three, Texas Mutual contends that the trial court lacked jurisdiction to render an award of damages and prejudgment interest, and that the proper course of action here is remand to the DWC for re-calculation. The Garcias counter that the trial court could award damages because that issue was before the DWC. With respect to the interest award, the Garcias argue that the Texas Rules of Civil Procedure apply in all civil actions involving the Act unless a specific Act provision conflicts. Since there is no Act provision prohibiting the award of prejudgment interest, the trial court was within its right to include it in its judgment.

We agree with the Garcias.

Texas Mutual is correct that the trial court sitting on appeal is limited to solely those issues considered by the DWC Appeals Panel. But remand to the DWC for a calculation of back-owed benefits is unnecessary here. "[A] court cannot award compensation benefits, except on appeal from a Commission ruling[.]" *Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 804 (Tex. 2001). We find that the damages-for-back-owed-benefits issue is sufficiently subsumed within the question of when a recovery occurred so as to allow the trial court to reach it sitting on modified

9

*de novo* review of the DWC's decision, especially given that the amount owed is readily calculable and Texas Mutual does not otherwise assert that the mathematical calculation made by the trial court using the date of actual monetary disbursement was incorrect. Indeed, the question of the amount of benefits was an issue squarely before the DWC.

As for the interest issue, Texas Mutual asserts that we must remand to the DWC for calculation of appropriate interest, given that the trial court ordered five percent recovery when the Texas Labor Code requires the use of a floating interest rate tied to the one-year treasury bills rate issued by the United States Treasury. *See* TEX.LAB.CODE ANN. § 401.023. An appellant must show it is entitled to reversal by citing to the law, citing to the record, and making argument. However, Texas Mutual does not provide this Court with any argument that the treasury rate during the period is not five percent, nor does it point to evidence showing five percent was the incorrect rate or otherwise explain why remand for re-calculation is more appropriate than rendition. *See* TEX.R.APP.P. 43.3 (in reversing a trial court the court of appeals should render judgment the trial court should have rendered unless remand is necessary for further proceedings or the interest of justice require remand for a new trial). Absent proof of harm, we cannot reverse on this point.

Issue Three is overruled.

## CONCLUSION

The judgment of trial court is affirmed.


April 3, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Larsen, Senior Judge
Larsen, Senior Judge (Sitting by Assignment)