**Reversed and Remanded and Opinion filed February 7, 2012**



In The

# Fourteenth Court of Appeals

## NO. 14-10-01242-CV

### JIMMY RAYNOR AND RUBY LEWIS, INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF JOSEPH LYNN RAYNOR, DECEASED, Appellants

### V.

### MOORES MACHINE SHOP, LLC, Appellee

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 47198**

## OPINION

Joseph Lynn Raynor was electrocuted while welding on the premises of Moores Machine Shop, LLC. Joseph's parents, Jimmy Raynor and Ruby Lewis, individually and as representatives of Joseph's estate (collectively, "the Raynors"), sued Moores and asserted claims for negligence and gross negligence in connection with his death. Moores moved for summary judgment on alternative grounds, asserting that the claims are barred by (1) the Workers' Compensation Act's provisions governing employees; and (2) Texas Civil Practice and Remedies Code chapter 95's provisions governing independent contractors.

In two issues, the Raynors contend on appeal that the trial court erred in granting summary judgment for Moores. We reverse and remand.

## I.     Factual and Procedural Background

Joseph performed welding at Moores Machine Shop in Pearland in July 2007.  He was working in an open metal structure at Moores and was last seen using welding equipment before he was found dead on his second day on the job.

The Raynors alleged that Joseph was electrocuted while welding as a result of "extremely dangerous and unsafe welding cables and related equipment," including welding cables with rips and tears that were repaired improperly with duct tape, and equipment that was not properly grounded. They also alleged that Joseph lacked proper protective equipment.

Moores filed an amended motion for summary judgment and a supplement adding a no-evidence ground. Moores argued that (1) the Texas Workers' Compensation Act's exclusive remedy provision bars the Raynors' claims because Joseph was a Moores employee; and (2) even if Joseph was an independent contractor, Texas Civil Practice and Remedies Code section 95.003 forecloses liability because the Raynors cannot establish actual knowledge of the allegedly dangerous condition that caused Joseph's death. The Raynors argued in response that Joseph was an independent contractor rather than an employee, and that Moores retained control over Joseph's work and had actual knowledge of the allegedly dangerous condition.

On November 19, 2010, the trial court granted summary judgment in favor of Moores without specifying the basis for its ruling. This appeal followed.

## II.     Standards of Review

We review summary judgments de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). When the trial court grants the judgment without

specifying the grounds, we will affirm if any of the grounds presented are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

Moores moved for summary judgment on both traditional and no-evidence grounds. We apply the familiar standard of review appropriate for each type of motion, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See Joe*, 145 S.W.3d at 157 (traditional summary judgment); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (no-evidence summary judgment).

In a traditional summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). To be entitled to traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex. 1996). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex. 2005).

In a no-evidence summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the non-movant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i). We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *King Ranch, Inc.*, 118 S.W.3d at 751. "Less than a scintilla of evidence exists when the

3

evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). On the other hand, more than a scintilla of evidence exists when reasonable and fair-minded people could differ in their conclusions based on the evidence. *Id.*

### III. Did Moores Conclusively Establish that Joseph was Its Employee?

In their first issue, the Raynors contend that the workers' compensation bar does not apply because Moores did not conclusively establish Joseph was its employee. *See Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 475 (Tex. 2005); *see also* Tex. Labor Code § 408.001(a) (recovery of workers' compensation benefits "is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.").

#### A. Employee Versus Independent Contractor

Under the Worker's Compensation Act, an "employee" is defined as "each person in the service of another under a contract of hire, whether express or implied, or oral or written." Tex. Labor Code § 401.012(a). This definition includes "a person, ***other than an independent contractor or the employee of an independent contractor***, who is engaged in construction, remodeling, or repair work for the employer at the premises of the employer." *Id.* § 401.012(b)(2) (emphasis added).[1]

The test for distinguishing between an employee and an independent contractor focuses on whether the employer has the right to control the progress, details, and

---

[1] Moores also cites another section of the Act that applies to certain building and construction workers. This section defines "independent contractor" as "a person who contracts to perform work or provide a service for the benefit of another," and who (1) is paid by the job and not by the hour or some other time-measured basis; (2) is free to hire as many helpers as desired and may determine the pay of each helper; and (3) is free to, while under contract to the hiring contractor, work for other contractors or is free to send helpers to work for other contractors. *See* Tex. Lab. Code §§ 406.141(2), 406.142. Although Moores states that Joseph did not satisfy elements (1) and (2) and therefore was not an independent contractor, Moores does not argue that this statute supplants the common law right of control test.

methods of operations of the work. *Thompson v. Travelers Indem. Co. of R.I.* 789 S.W.2d 277, 278 (Tex. 1990). Control of the end sought to be accomplished does not suffice; the employer also must control the means and details of accomplishing the ends. *Id.*

The right to control is measured by considering (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and material to perform the job; (3) the worker's right to control the progress of the work, except as to the final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job. *Tex. A&M Univ. v. Bishop*, 156 S.W.3d 580, 584–85 (Tex. 2005); *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002). Determining employee status is a fact question for the jury unless "the material underlying facts are not in dispute and can give rise to only one reasonable conclusion." *See Bishop*, 159 S.W.3d at 585. The test for determining employee status is the same for both workers' compensation purposes and common law claims. *Thompson*, 789 S.W.2d at 278.

**B.      Genuine Issues of Material Fact Exist Regarding Joseph's Status**

Moores' amended summary judgment motion relied on (1) the affidavit of one of its owners, Greg Arsement; (2) a copy of the declaration page for Moores' workers' compensation policy; (3) the affidavit of Kelly Gravois, a supervisor at Moores; and (4) excerpts from the depositions of Arsement and Gravois.

Based on Arsement's and Gravois' affidavits, Moores asserts that Joseph was working as an employee of Moores; hired on July 12, 2007; paid for the work he performed that day; and working in the course of his employment for Moores when he died on July 13, 2007.

Moores contends that it "directed the details of how [Joseph] performed his job." Gravois helped Raynor set up the welding machine on the day of the accident, and instructed Joseph to weld metal grating to a metal framework located on a concrete pad outside the machine shop building; Gravois described this pad as the floor of a

5

compressor shed. Moores owned the welding equipment Joseph used to perform the work. Gravois last saw Joseph between 9:30 and 10:00 a.m. before leaving the job site. Gravois returned about 20 minutes later to find Joseph unresponsive and lying on his back.

Pointing to the declaration page attached to Arsement's affidavit, Moores also contends that Joseph was covered by its workers' compensation insurance. Arsement averred that Moores paid funeral and burial expenses to the Raynors as workers' compensation benefits and was reimbursed in part by the carrier. Based on this evidence, Moores argues that section 408.001(a) of the Texas Labor Code provides the exclusive remedy for Joseph's work-related death.

Moores also points to statements in Arsement's and Gravois' depositions as evidence of Joseph's employee status. Moores contends that (1) Joseph was out of work and needed a job; (2) he told Gravois that he had attended a trade school for welding; (3) Gravois introduced Joseph to Arsement, who decided to hire Joseph as a day laborer at $12.00 an hour; (4) Joseph did not supply the tools, supplies, and materials to perform the work; and (5) Moores controlled Joseph's work. Arsement testified that Joseph could have been employed by Moores to perform other tasks in addition to welding, and his method of payment depended on how long he continued to work for Moores. Arsement said Joseph would have been paid an hourly wage by check had he continued to work for Moores.

Gravois testified that Joseph worked about four hours on the first day before leaving for a job interview. Gravois and Joseph did some welding and other work during the first day. Gravois watched Joseph to see if he could do what Gravois wanted him to do, and specifically instructed him on how to perform the work.

Joseph used Moores' welding equipment again on the second day. Gravois told him that they were going to fit a piece onto the floor and "only left it up to [Joseph] where he would start tacking down the metal on top of the beams." The only discretion

6

Joseph had on the project was "what pattern he wanted to use to tack down the floor." Joseph and Gravois worked together for about 45 minutes to an hour on the second day.

The Raynors contend that this evidence does not satisfy the Supreme Court's five-factor right of control test. The Raynors maintain that the evidence tends to show Joseph was an independent contractor.

Turning to the first factor — the independent nature of Joseph's business — the Raynors point out that Moores did not weld as a part of its core business. Moores' business focused on machining tools for the oilfield, and these tools were not welded. Any welding was incidental to Moores' machine-shop business, and Moores had only one welding machine. Further, they assert Joseph was hired because Moores needed welding help and Joseph was a trained welder. Moores wanted Joseph to work for just a few days and was aware that Joseph was interviewing with other companies.

The Raynors also highlight evidence that Joseph received distinctive treatment from Moores. Moores did not require Joseph to fill out the employment application and paperwork that its other 50-plus employees had to complete; it did not require Joseph to take a drug test like its employees; and it did not require Joseph to give the detailed background information required of its employees. Moores personnel were unable to give Joseph's last name to the sheriff's deputy investigating his death; they knew him only as "Joe." The deputy had to check the phone numbers in Joseph's cell phone to learn his name. And after Joseph's death, Moores hired an acknowledged independent contractor to finish the welding job.

Moores responds by pointing to section 401.012(b)(2) of the Labor Code, which defines an "employee" under the Workers' Compensation Act to include "a person . . . engaged in construction, remodeling, or repair work at the employer's premises." *See* Tex. Lab. Code § 401.012(b)(2). This section is not dispositive because it applies only if the person is not an independent contractor. *See id.* Section 401.012 also provides that an

employee does not include "a person whose employment is not in the usual course and scope of the employer's business." *See id.* § 401.012(c)(2).

Although Arsement and Gravois testified that Joseph was a Moores employee whose work was controlled by Moores, there also is evidence that Moores did not treat Joseph the same way it treated its employees. Arsement acknowledged that it was clear Joseph would work "just a couple of days." And although Arsement testified that Joseph could have performed other jobs if needed, there is evidence he was hired specifically to perform a welding task that was not part of Moores' core business. Additionally, Moores allowed Joseph to leave on the first day to interview for a job with another company.

Concerning the second factor — the worker's obligation to furnish necessary tools, supplies, and materials to perform the job — the Raynors do not dispute that Moores furnished the necessary tools to do his job. The Raynors are suing Moores in part for furnishing the allegedly defective welding machine.

As to the third factor, — Joseph's right to control the progress of the work except as to the final details — the Raynors point to Gravois' testimony. Gravois let Joseph determine how he wanted to do the job after confirming that Joseph knew how to weld. Gravois admitted that he told Joseph "it was basically up to him where he wanted to start" on the job. Gravois testified that Joseph had "discretion" as to what "pattern he wanted to use" to weld the metal onto the beams. Gravois left Joseph alone to do the job and left the job site. Although Gravois told Joseph what welding he wanted done, there is evidence that Joseph decided where to start and what pattern to use.

The fourth factor takes into consideration the time for which Joseph was employed. Moores argues that Joseph was a day laborer who worked only for a short time, and notes that day laborers can be employees covered by workers' compensation. In response, the Raynors do not dispute that someone working for a short time can be an employee in some circumstances; instead they argue that Moores did not conclusively establish that Joseph was its employee in this case. The Raynors point to evidence that

8

Joseph had worked at Moores for less than eight hours over two days before he died. Arsement acknowledged that Moores' plan from "the beginning" was for Joseph "to work just a couple of days." Arsement knew that Joseph "was looking for other, more steady work, and he was going to come and help [Moores] with this welding, and then he was going to be on his way."

Finally, as to the fifth factor — the method of payment — at least some evidence raises a fact issue. Moores contends it is undisputed that Moores paid Joseph by the hour, not by the job. But Arsement testified that Moores paid Joseph "under the table" in cash, and there are no documents supporting his claim of an hourly wage. Arsement also testified that Moores did not pay Joseph by check through its payroll system and did not withhold taxes. The failure to withhold taxes or social security weighs against a finding of an employment relationship. *See Thompson*, 789 S.W.2d at 279; *see also Limestone Prods.*, 71 S.W.3d at 312–13.

Moores argues that "sufficient" evidence supports its traditional motion for summary judgment. But sufficient evidence is not the standard; rather, the summary judgment standard requires Moores to conclusively establish each element of its affirmative defense. *See Sci. Spectrum*, 941 S.W.2d at 911. Reviewing the evidence in the light most favorable to the non-movant, we conclude the Raynors raised genuine issues of material fact regarding Joseph's employee status so as to preclude summary judgment under the workers' compensation bar. We sustain the Raynors' first issue.

## IV. Does Chapter 95 Prohibit Recovery?

Moores argues in the alternative that it still is entitled to summary judgment under Texas Civil Practice and Remedies Code chapter 95 even if Joseph was an independent contractor.

Chapter 95 sets out two mandatory conditions for its application. First, the claim must be "against a property owner, contractor, or subcontractor for personal injury, death,

9

or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor." Tex. Civ. Prac. & Rem. Code § 95.002(1). Second, the claim must "arise[] from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." *Id*. § 95.002(2).

If these conditions are met, then a property owner is not liable for personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

*Id.* § 95.003.

The defendant bears the initial burden of establishing that chapter 95 applies. *Rueda v. Paschal*, 178 S.W.3d 107, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.) Only after the defendant establishes that chapter 95 applies does the burden shift to the plaintiff to establish both prongs of section 95.003.

The Raynors contend that chapter 95 does not apply to this case, and even if it does apply, their claims are not barred because there is evidence that Moores (1) exercised control over Joseph's work; and (2) was aware of the condition that caused Joseph's death but failed to warn him.

We conclude that the existence of a fact issue regarding Joseph's employment status precludes summary judgment in Moores' favor under chapter 95.

Section 95.002(1) limits this provision's application to claims for personal injury, death or property damage *"to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor . . . ."* Tex. Civ. Prac. & Rem. Code §

10

95.002(1) (emphasis added). It does not apply to claims for personal injury or death to the employee of an owner. *See id*. Therefore, to establish chapter 95's applicability by way of summary judgment, Moores had to establish that Joseph was not its employee.

Moores pleaded and offered proof seeking to establish that Joseph was Moores' employee. We already have held that summary judgment may not be predicated on the workers' compensation bar because the Raynors have raised genuine issues of material fact regarding whether Joseph was a Moores employee or an independent contractor. Because there is a fact question about whether Joseph was the employee of an owner, there is a fact question that precludes a determination via summary judgment that chapter 95 applies.

## Conclusion

We sustain the Raynors' issues and reverse and remand the case for further proceedings consistent with this opinion.


/s/     William J. Boyce
        Justice


Panel consists of Justices Brown, Boyce, and McCally.

11