**Affirmed and Opinion filed August 1, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00108-CV

### MICHAEL KIMBRELL, Appellant

### V.

### MEMORIAL HERMANN HOSPITAL SYSTEM, MEMORIAL HERMANN HEALTHCARE SYSTEM, MEMORIAL HERMANN MEDICAL GROUP, Appellees

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2010-27437A**

### O P I N I O N

Michael Kimbrell sued Memorial Hermann Hospital System, Memorial Hermann Healthcare System, and Memorial Hermann Medical Group (the Hospital) for claims based on medical negligence, negligent misrepresentation,

fraud, negligence per se, and joint venture.[1]  The Hospital filed a traditional and no-evidence motion for summary judgment on all of Kimbrell's claims; that is, those arising under the ostensible agency doctrine for the acts of medical negligence by a physician, as well as the acts of direct negligence alleged against the Hospital.  The trial court granted summary judgment, and Kimbrell contends the trial court erred by granting the Hospital's motion.  We affirm.

## I.    BACKGROUND

Kimbrell has had gastroesophageal reflux disease (GERD) for most of his life.[2]  He was taking over-the-counter and prescription medications to manage the symptoms, but in March 2008 he learned about a surgery that could cure GERD when he watched an infomercial that aired during a local news program.  The infomercial was produced in part by the Hospital and featured Dr. John Zerwas, the Hospital's chief medical officer.  Zerwas introduced a surgeon, Dr. James Field, who discussed GERD and the surgery.  According to Kimbrell's deposition testimony, Zerwas said during the infomercial that Field was "a surgeon at Memorial Hermann," and the infomercial had an emblem or logo on the screen that read "Memorial Hermann."  Zerwas's jacket also had a Memorial Hermann emblem, but Field's did not.  Kimbrell testified that there was writing on the screen: "Find out more about acid reflux and laparoscopic surgery WWW, dot, Memorial Hermann, dot, org."[3]

---

[1] Kimbrell also sued several doctors involved in treating him.  They are not parties to this appeal.

[2] GERD causes acid reflux and regurgitation of food.

[3] In his brief on appeal, Kimbrell provides a hyperlink to a video posted on the website, www.youtube.com.  The Hospital suggests that we should not consider the YouTube video because it is not part of the court's record.  Kimbrell contends the video was played for the trial court, and Kimbrell's response to the motion for summary judgment indicates a video was attached as evidence.  In his appellate reply brief, Kimbrell "request[s] that the Court allow

Kimbrell contacted Field directly for an appointment to discuss the surgery. At the first appointment, Field gave Kimbrell documents indicating that "Surgical Group of the Woodlands operates out of Memorial Hermann Hospital and the Woodlands St. Luke's Community Medical Center and the Memorial Hermann Surgery Center." Field referred Kimbrell to a gastroenterologist, Dr. Ali Turkan Dural. Kimbrell was cleared for surgery. He explained, "I proceeded [with the plan for surgery] because basically from the video. . . . I mean, Memorial Hermann is Memorial Hermann. I mean, I went because of what they said on the video." Kimbrell analogized to Tiger Woods advertising golf clubs:

> [I]f Tiger Woods told me to buy a pair of golf clubs, I wouldn't question when or why or why he — you know, I mean, he's supposed to be the best and he recommended something. I'm going to go with the recommendation. It's supposed to be the best hospital, one of the best hospitals in Houston. It's one of the biggest hospitals in Houston. I wasn't fixing to question somebody like that on something I knew nothing about.

Kimbrell testified that he thought Field was "representative of Memorial Hermann."

---

supplementation or correction" of the record. Although Kimbrell did not ask the trial court clerk to supplement the record as outlined in Rule 34.5 of the Texas Rules of Appellate Procedure, *see* TEX. R. APP. P. 34.5(c)(1), we nonetheless ordered the District Clerk to supplement the record with this video. *See El Paso Cnty. v. Ontiveros*, 36 S.W.3d 711, 714 (Tex. App.—El Paso 2001, no pet.) ("[A] court of appeals must construe the rules governing supplementation of the appellate record liberally, so our decision turns on substance rather than procedural technicality." (citing *Gallagher v. Fire Ins. Exch.*, 950 S.W.2d 370, 371 (Tex. 1997))). The District Clerk informed this court, however, that the video was not located within the court's file.

We will not consider matters not formally made part of the appellate record, including this YouTube video. *See, e.g.*, *In re K.M.*, No. 14-12-00871-CV, — S.W.3d —, 2013 WL 2106087, at *2 (Tex. App.—Houston [14th Dist.] May 16, 2013, no pet. h.) ("With limited exceptions not relevant to this appeal, an appellate court may not consider matters outside of the appellate record."). However, we have reviewed Kimbrell's deposition testimony, and he testified considerably about the contents of the video. The appellate briefing does not suggest the video would add to Kimbrell's testimony, so our ultimate decision today turns on substance rather than procedural technicality.

Kimbrell also testified that before the surgery he signed two separate forms stating, "All physicians furnishing services to the patient, including the radiologist, pathologist, anesthesiologist, and emergency center physicians, or other physicians, are independent contractors for the patient and are not employees or agents of the hospital and may bill directly for their services." He acknowledged having read the forms.

The surgery did not cure Kimbrell's GERD—his condition worsened after the surgery. He sued Field and Dural for medical negligence and claimed vicarious liability against the Hospital based on the doctrine of "apparent agency, ostensible agency, or agency by estoppel."[4] He also asserted a claim directly against the Hospital for "negligence and negligent misrepresentation" concerning the infomercial. The Hospital filed a traditional motion for summary judgment on the apparent agency issue for the medical negligence claim, combined with a no-evidence motion for summary judgment on Kimbrell's negligence and negligent misrepresentation claim. In particular, the Hospital alleged there was no evidence of causation on the latter claim. Before the trial court ruled on the motion, Kimbrell filed an amended petition alleging additional claims of fraud and negligence per se, and a joint enterprise theory of vicarious liability.

The trial court granted summary judgment for the Hospital "as to plaintiff's claims for negligent misrepresentation [and] medical negligence." The Hospital then filed special exceptions on Kimbrell's fraud and negligence per se claims. The court granted the special exceptions and struck these claims from Kimbrell's live pleading. The court severed the action against the Hospital and signed a final judgment. Kimbrell filed a timely notice of appeal.

---

[4] These terms are used interchangeably; there is no distinction among them. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 n.2 (Tex. 1998).

4

## II.    ANALYSIS

In two issues, Kimbrell contends that the trial court erred by granting summary judgment for the Hospital because there is a genuine issue of material fact on each of his claims and vicarious liability theories.[5]

## A.    Standard of Review

We review summary judgments de novo.  *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004).  We take as true all evidence favorable to the nonmovant, indulging reasonable inferences and resolving doubts in the nonmovant's favor.  *Raynor v. Moores Mach. Shop, LLC*, 359 S.W.3d 905, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Joe*, 145 S.W.3d at 157; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

For a traditional summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Joe*, 145 S.W.3d at 157.  A defendant may satisfy this burden by conclusively negating at least one essential element of each of the plaintiff's causes of action.  *Raynor*, 359 S.W.3d at 907 (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)).

"We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact."  *Id.* at 907–08 (citing *King Ranch*, 118 S.W.3d at 751).

---

[5] His issues are: (1) the trial court erred in granting summary judgment against Kimbrell; and (2) the evidence presented in the trial court is sufficient to raise material fact issues on ostensible agency, medical negligence, negligent representation, joint enterprise, and fraud.

"Evidence is conclusive only if reasonable people could not differ in their conclusions." *Id.* at 907 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005)). There is more than a mere scintilla of evidence if reasonable and fair-minded people could differ in their conclusions. *Id.* at 908 (citing *King Ranch*, 118 S.W.3d at 751).

## B.    Ostensible Agency

Kimbrell claims that the Hospital is liable for the malpractice alleged against Field under the doctrine of ostensible agency. The Hospital contends Kimbrell failed to raise a genuine issue of material fact on ostensible agency because Kimbrell signed the Hospital's consent form declaring that all physicians "are independent contractors for the patient and are not employees or agents of the hospital." Thus, we must first resolve whether, notwithstanding any other Hospital conduct, Kimbrell's ostensible agency claim is negated as a matter of law by the consent form.

To place ostensible agency in context, we begin with fundamental agency principles. First, a principal is vicariously liable for the negligence of an agent acting within the scope of his or her agency even though the principal has not personally committed a wrong. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). As a corollary, a principal is not usually liable for the negligence of an independent contractor. *Id.*

However, as an equitable exception to the bright-line principles, the doctrine of ostensible agency may render a principal liable for the conduct of a person who is not in fact the principal's agent. *See id.* at 947–48. This ostensible-agency exception applies "when the principal's conduct should equitably prevent it from denying the existence of an agency." *Id.* at 947.

In accordance with these agency principles, hospitals are "ordinarily not

6

liable for the negligence of a physician who is an independent contractor." *Id.* at 948. However, "a hospital may be vicariously liable for the medical malpractice of independent-contractor physicians when plaintiffs can establish the elements of ostensible agency." *Id.* To establish a hospital's liability for an independent contractor's medical malpractice under this doctrine, the plaintiff must show:

> (1) he or she had a reasonable belief that the physician was the agent or employee of the hospital,

> (2) such belief was generated by the hospital affirmatively holding out the physician as its agent or employee or knowingly permitting the physician to hold herself out as the hospital's agent or employee, and

> (3) he or she justifiably relied on the representation of authority.

*Id.* at 949.

In *Sampson*, Dr. Zakula was an emergency room physician at Baptist Memorial. *Id.* at 946. Sampson, bitten by a brown recluse spider, went to the Baptist Memorial emergency room via ambulance and was treated by Dr. Zakula. *Id.* Sampson sought to hold Baptist Memorial responsible for Dr. Zakula's alleged malpractice. *Id.* at 947. Baptist Memorial relied upon Sampson's signed consent form acknowledging that "each physician is an independent contractor." *Id.* at 950. The court of appeals determined that Baptist Memorial had a nondelegable duty for the malpractice of emergency room physicians. *Id.* at 948–49.

The Texas Supreme Court reversed and focused its ultimate analysis on the second ostensible-agency element: holding out. *See id.* at 950. The court determined that the plaintiff's belief (element one) must be either based on or generated by ***some conduct*** on the part of the Hospital. *Id.* The summary judgment evidence established that, although Dr. Zakula was an emergency room physician at the Hospital and was the physician that treated Sampson when she

7

presented to the Hospital, there were signs in the Hospital notifying patients that the emergency room physicians were independent contractors, and Sampson signed consent forms acknowledging that the physicians were independent contractors. *Id.* Thus, on the record before the court, it concluded that Baptist Memorial "took no affirmative act to make actual or prospective patients think the emergency room physicians were its agents or employees, and did not fail to take reasonable efforts to disabuse them of such a notion." *Id.* Stated differently, Sampson's "belief" that a physician practicing medicine in the Hospital was a Hospital employee, even if reasonable, was not generated by affirmative conduct of the hospital, ***and*** the hospital took affirmative steps to inform patients to the contrary. *See id. Sampson* is dispositive of this case.

The affirmative act of holding out upon which Kimbrell relies is confined to the GERD infomercial. In it, Zerwas said that Field was "a surgeon at Memorial Hermann." Zerwas did not explicitly state that Field was an agent or employee or a physician employed by the hospital. Although Zerwas wore a lab coat with the Hospital's emblem, Field did not. *Cf. Moren v. Columbia Med. Ctr.–E.*, No. 08-00-00040-CV, 2001 WL 522432, at *4 (Tex. App.—El Paso May 17, 2001, pet. denied) (not designated for publication) (finding some evidence of ostensible agency based on conflicting affidavits about whether the apparent agent wore a lab coat with the hospital's insignia on it). Stating that a physician is "a surgeon at" a hospital, by itself, is akin to a hospital staffing the emergency room with independent contractor physicians and opening the doors for business. *See Sampson*, 969 S.W.2d at 948–50.

We turn next to evidence of the Hospital's conduct affirmatively disclaiming the agency relationship. Twice, the Hospital had Kimbrell sign a consent form containing the explicit notice that physicians at the hospital were independent

8

contractors and not agents or employees of the Hospital. The language was clear and unambiguous: "All physicians furnishing services to the patient, including the radiologist, pathologist, anesthesiologist, and emergency center physicians, or other physicians, are independent contractors for the patient and are not employees or agents of the hospital and may bill directly for their services." Further, the summary judgment evidence does not suggest any Hospital conduct designed to conceal or obscure this language or withhold its request for signature until Kimbrell was in physical distress.

We conclude, as did the *Sampson* court, that the Hospital took no affirmative act to make actual or prospective patients think that Field was its agent or employee, and did not fail to take reasonable efforts to disabuse them of such a notion. As such, the trial court correctly concluded that, as a matter of law under the facts of this case, Kimbrell's claim for ostensible agency fails.[6]

Kimbrell's issues concerning ostensible agency are overruled.

## C. Joint Enterprise

Kimbrell contends that he raised a genuine issue of material fact on the joint enterprise theory of liability. A finding of joint enterprise requires proof of the following:

> (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2003) (quotation omitted).

---

[6] We do not hold today, as the Hospital urges, that a patient's signing of a consent form disclaiming an agency relationship will conclusively negate as a matter of law a hospital's prior holding out of a physician as its agent.

Regarding the third element, the "monetary interest must be common among the members of the group—it must be one 'shared without special or distinguishing characteristics.'" *Id.* at 531 (citing *Ely v. Gen. Motors Corp.*, 927 S.W.2d 774, 779 (Tex. App.—Texarkana 1996, writ denied)).

Kimbrell contends that the Hospital and Field "had a community of pecuniary interest in the common purpose of the members of the joint enterprise group, i.e., promoting the use of surgery for GERD patients, as opposed to medical management that would not involve surgical or hospital services." Kimbrell contends there is evidence of a common pecuniary interest because "both hoped to get business through the infomercial."

Even if Kimbrell had supported these assertions with references to record evidence—which he did not do—there would still be no evidence of a joint venture as a matter of law. "[T]he existence of monetary benefits flowing from [a] program does not by itself satisfy the third element of a joint venture. There must still be evidence that the monetary benefits were shared among the members without special or distinguishing characteristics." *Id.* at 532. For example, the Texas Supreme Court found no evidence of a community of pecuniary interest between two institutions involved in a surgical residency program in part because one institution retained the right to bill patients directly for services rendered, and the income belonged solely to that institution and was not shared with the other institution. *See id.*

Similarly, the consent form discussed above indicated that the Hospital and independent contractor physicians maintained the right to bill separately, and there is no evidence in this record that the Hospital and Field shared any income. Kimbrell has not alleged facts—much less pointed to any evidence—of a community of pecuniary interest between the Hospital and Field.

10

Kimbrell's issues concerning joint enterprise are overruled.

### D.    Causation for Direct Negligence

Kimbrell contends there is some evidence that "the infomercial caused the Appellant's injury," and "[b]ut for this infomercial, Appellant would not be here today." The Hospital contends that the trial court's no-evidence summary judgment was proper on the issue of causation because Kimbrell failed to expressly and specifically identify the supporting evidence on file that amounted to evidence of causation, and further, Kimbrell failed to adduce any expert testimony. We agree with the Hospital.

When faced with a no-evidence motion for summary judgment, a nonmovant cannot avoid judgment by simply filing voluminous evidence and stating generally that a genuine fact issue has been raised. *See, e.g.*, *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 331 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A contrary holding "would place an unreasonable burden on the trial court and would violate the requirement of Rule 166a(i) that the response must point out evidence that raises a genuine issue of fact as to each challenged element." *Id.* (affirming a no-evidence summary judgment when the nonmovant responded with a general statement that fact issues existed and referenced 650 pages of evidence, although the nonmovant made more specific arguments on appeal); *see also Eaton Metal Prods., L.L.C. v. U.S. Denro Steels, Inc.*, No. 14-09-00757-CV, 2010 WL 3795192, at *6 (Tex. App.—Houston [14th Dist.] Sept. 30, 2010, no pet.) (mem. op.) (affirming because "[b]lanket citation to voluminous records is not a proper response to a no-evidence motion for summary judgment").

Kimbrell filed a response and supplemental response to the Hospital's motion. Excluding the standard of review, Kimbrell's entire argument regarding causation in the response was: "The deposition testimony of plaintiff Michael and

that of his mother repeatedly explain that plaintiff only found out about the treatment he later received from defendant Field through the conduct of the [Hospital's] marketing, or what they call, somewhat disingenuously, 'awareness building.'" He did not refer to any particular statements in the deposition or pages of the transcript. His supplemental response included several additional sentences but again only referred generally to "the deposition testimony" of six witnesses without any specific references to the evidence. Accordingly, Kimbrell did not point out evidence that raised a genuine issue of material fact on the element of causation, and the trial court correctly granted the motion. *See San Saba Energy*, 171 S.W.3d at 331.

Further, Kimbrell did not adduce any evidence from an expert witness on the cause of his injuries. "In medical malpractice cases, expert testimony regarding causation is the norm: 'The general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors.'" *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010) (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007)). An expert witness must "explain how and why the negligence caused the injury." *Id.* at 536.

This is not the type of case that can be proven by lay testimony; for example, where certain types of pain and bone fractures result from an automobile accident, or where "an otherwise healthy person . . . suddenly experience[s] health difficulties following the defendant's negligent conduct [and] the plaintiff's symptoms were reasonably attributable to the negligence and nothing else." *Id.* at 534. Kimbrell contends that but for the Hospital's conduct, he "would not have had the contraindicated (because of lack of proper motility testing prior to surgery) GERD surgery, subsequent repair surgery and future surgery to fix the resultant

12

problems." Kimbrell was not an otherwise healthy person before the surgery—he had GERD, and the surgery was meant to correct a preexisting problem. *See id.* at 534–35 (expert testimony required to prove whether the defendant's failure to provide a colon cancer patient with antibiotics after abdominal surgery was a proximate cause of the patient's abdominal pain and suffering resulting from an infection).

Accordingly, Kimbrell's testimony that he would not have had the surgery but for the Hospital's statements in the infomercial does not satisfy his burden to produce evidence on the issue of causation. No expert testified by affidavit or otherwise concerning "how and why" any negligence by the Hospital caused injury to Kimbrell. His direct negligence claim fails for this reason.

Kimbrell's issues concerning the no-evidence summary judgment are overruled.[7]

## CONCLUSION

Having overruled all of Kimbrell's issues, we affirm the trial court's judgment.


/s/     Sharon McCally
        Justice


Panel consists of Justices Christopher, Jamison, and McCally.

---

[7] Kimbrell does not challenge on appeal the trial court's granting of the special exceptions; accordingly, we do not address the fraud and negligence per se claims struck from his petition.

13