# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00284-CV

---

**Alvy Childress, Appellant**

**v.**

**Texas Mutual Insurance Company, Appellee**

---

### FROM THE 340TH DISTRICT COURT OF TOM GREEN COUNTY
### NO. C180020C, THE HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Pro se appellant Alvy Childress suffered an on-the-job injury in 2015.  Appellee Texas Mutual Insurance Company, his workers' compensation carrier, determined that a torn tendon in his shoulder was not compensable.  An administrative law judge (ALJ) with the Texas Department of Insurance, Division of Workers' Compensation (the Division), held a contested case hearing and agreed with Texas Mutual; her decision was upheld by an Appeals Panel.  *See* Tex. Lab. Code §§ 410.151-.169 (Contested Case Hearing), .201-.209 (Appeals Panel).  Childress sought judicial review, *see id*. §§ 410.251-.308, and the trial court granted summary judgment in favor of Texas Mutual.  We will affirm the trial court's order.

### FACTUAL AND PROCEDURAL SUMMARY

Childress owns a steel-fabrication-and-erection business called ACE Fab, and in May 2015, while moving an iron beam weighing between 2,000 and 3,000 pounds, he ruptured

his right bicep tendon. Texas Mutual accepted the bicep injury as compensable but determined that a "full thickness tear of his distal supraspinatus tendon" in his right shoulder was "degenerative in nature and not caused or aggravated by the work place injury." Childress appealed, and on September 27, 2017, the ALJ held a contested case hearing to decide: whether the supraspinatus tear was compensable; whether Childress had reached maximum medical improvement (MMI) and, if so, when; his impairment rating (IR) if he had reached MMI; and whether he had disability starting July 25, 2016.[1]

---

[1] The supreme court has explained IRs and MMI as follows:

> An employee receives impairment income benefits according to the employee's impairment rating, which is the percentage of the whole body's permanent impairment. To determine the impairment rating, an examining doctor evaluates the permanent effect of the employee's injury under statutory guidelines. The doctor expresses the rating as a percentage of permanent impairment to the whole body. The greater this percentage, the greater the amount the employee receives as impairment income benefits. . . .

> A doctor will not certify an impairment rating until the employee reaches "maximum medical improvement," the point at which the employee's injury will not materially improve with additional rest or treatment. The date of maximum medical improvement is fixed when an examining doctor certifies that no further material recovery or lasting improvement can reasonably be anticipated. The [Workers' Compensation Act] presumes that maximum medical improvement will be reached not later than two years after income benefits begin to accrue.

> Until an employee reaches maximum medical improvement, he or she may receive temporary income benefits. Once an employee reaches maximum medical improvement, temporary income benefits end. Whether the injured employee receives any additional income benefits depends largely on the assigned impairment rating.

*Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 253-54 (Tex. 1999) (citations omitted).

2

In her Decision and Order, the ALJ stated that she had considered Childress's proffered "letters of causation" from Dr. Cynthia Goodman, Dr. Johann Van Beest, and Dr. Paul Vu, as well as testimony by Dr. Brett Bolte, an expert provided by Texas Mutual. The ALJ summarized Dr. Goodman's report as opining that "the supraspinatus muscle and tendon are commonly injured when a person attempts to lift a heavy object" and that the "pulling and jerking motion" described by Childress "created the supraspinatus injury, which [Dr. Goodman] characterized as a spontaneous rupture of the flexor tendon in the right upper arm." She said that Dr. Vu had "described the traction force" that caused that damaged Childress's right upper arm, "point[ing] to" a September 3, 2015 MRI that identified "a full thickness tear of the distal supraspinatus tendon at its insertion." However, the ALJ noted, Dr. Vu had not explained how Childress "was able to continue working for 3 months after his date of injury," nor had the doctor "persuasively explain[ed]" how, if the tear was a pre-existing condition aggravated by the workplace injury, "the condition was enhanced, accelerated, or worsened." Finally, the ALJ found Dr. Van Beest's evidence unpersuasive because although he stated that the workplace injury "caused injury to the right shoulder," his report "limits this damage to a rotator cuff strain, which is not the disputed condition."

Dr. Bolte, on the other hand, opined that "the right shoulder conditions were degenerative in nature" and not caused or worsened by the workplace injury. He stated that "an acute tear of the supraspinatus tendon would be very painful," would be "unlikely to go unnoticed for long after an injury," and would not typically be caused by the kind of injuring event Childress described. The ALJ summarized Childress's medical records as starting more than three months after the date of injury and as stating that Childress "uses arm normally—concerned about further damage." She said the first record diagnosed "only a non-traumatic

3

rupture of the bicep tendon" and stated that Childress's symptoms and pain levels were "mild"; that at the time, Childress told medical staff that he had "full range of motion"; and that an exam confirmed that his range of motion was "intact in all extremities." The ALJ concluded:

> After review, there was no qualified expert opinion evidence, based on reasonable medical probability, which provided a persuasive explanation of the causal link between the mechanism of the compensable injury and the right shoulder full thickness tear of the distal supraspinatus tendon. Thus, it is not part of the compensable injury.

The ALJ noted that although Childress had asserted that he had not reached MMI "because he needs further treatment," Designated Doctor Clayton Clark determined in September 2016 that Childress had reached MMI on June 22, 2016, and assigned a 1% IR, while Dr. Van Beest determined Childress reached MMI on July 25, 2016, with a 7% IR. However, the ALJ observed that Dr. Van Beest "rated a bicep muscle strain, which is not the compensable injury[, s]o his certification could not be adopted." She also stated that Childress reached "statutory MMI on August 19, 2017." *See id.* § 401.011(30)(B) (MMI is reached no later than two years from date on which income benefits begin to accrue). The ALJ recited that Dr. Clark's "certification was not contrary to the preponderance of the other medical evidence and is adopted." The ALJ determined:

> The May 2, 2015, compensable injury does not extend to and include a right shoulder full thickness tear of the distal supraspinatus tendon. Claimant reached maximum medical improvement on June 22, 2016. Claimant's impairment rating is 1%. Claimant had disability beginning on July 25, 2016, and continuing through September 2, 2016, but not from September 2, 2016, continuing through September 27, 2017, the date of the contested case hearing.

4

After Childress appealed, a Division Appeals Panel issued a notice stating that the ALJ's decision was final, the effect of which was the ALJ's Decision and Order became "the final decision of the appeals panel." *See id*. § 410.204(c). Childress then sought judicial review, and in his first amended petition stated that he was bringing the suit in his own name and "d/b/a ACE Fab party to this proceeding . . . as Employer, Employee and Claimant." He argued that his supraspinatus tear should be considered part of his compensable injury and that he had not reached MMI; contested the 1% IR; sought disability from June 22, 2016; and asserted claims for breach of contract, negligence, bad faith, and statutory violations.

Texas Mutual filed special exceptions, arguing that ACE Fab was not a party to the administrative proceeding, was not aggrieved by the Appeals Panel's decision, and had not exhausted its administrative remedies, and asking the trial court to therefore strike ACE Fab's claims. It also excepted to Childress's statement that he was seeking to appeal "all portions of the judgment," arguing that he was limited to challenging the findings and conclusions he contested before the Appeals Panel. *See id*. § 410.302(b) (suit for judicial review "is limited to issues decided by the appeals panel and on which judicial review is sought"). After a hearing on Texas Mutual's special exceptions, Childress again amended his petition, dropping ACE Fab as a claimant and asserting that Texas Mutual was liable for negligence for violations of the insurance code and the administrative code. He further argued that Texas Mutual had waived its right to specially object to ACE Fab as a party and stated that his pleadings "will reference Alvy Childress d/b/a ACE Fab only for substance rights to argument and credibility."

In January 2019, Texas Mutual filed a motion for summary judgment, arguing first that Childress had not stated a claim on which relief can be granted because his amended petition only leveled claims for negligence and violations of various statutes and rules, rather

5

than seeking judicial review of the appeals panel's final decision. Texas Mutual further contended that it was entitled to dismissal of "all claims brought by or on behalf of the employer, ACE Fab," because it was not a party to the administrative proceeding, noting that Childress is "both the employer and the injured employee, but the issues before the Appeals Panel pertain only to the employee." Texas Mutual argued in the alternative that "to the extent [Childress's] lawsuit seeks judicial review of the final decision" of the Appeals Panel, Texas Mutual was entitled to dismissal of Childress's claims for negligence and statutory violations because Childress's suit for judicial review is limited to the issues before the Appeals Panel. It also argued that Childress's claims for damages beyond workers' compensation benefits were barred by section 408.001 of the labor code. *See id*. § 408.001(a) (workers' compensation benefits are "the exclusive remedy" for employee covered by workers' compensation insurance who suffers work-related injury). Finally, Texas Mutual asserted a no-evidence motion arguing that Childress could not present evidence: that his supraspinatus tear is compensable; that his MMI was not June 22, 2016, or that his IR is something other than 1%; that Dr. Clark's certification was contrary to the evidence; or that Childress had a disability sometime after September 2, 2016.

Following a hearing in March 2019, the trial court signed an order granting Texas Mutual's motion for summary judgment. In its order, the trial court stated that Childress's second response, second supplemental response, and third supplemental response, all filed on the day of the hearing, were untimely and thus were not considered by the court. It affirmed the Appeals Panel's decision in its entirety, decreeing that Childress's compensable injury did not include his supraspinatus tear; that he reached MMI on June 22, 2016, with a 1% IR; that he had

6

disability from July 25, 2016, through September 2, 2016; and that he did not have disability from September 3 forward. This appeal followed.

**STANDARD OF REVIEW**

A proceeding seeking judicial review from an appeals panel's decision related to compensability or eligibility for or the amount of benefits is conducted under a "modified de novo" standard. *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 528 (Tex. 2000) (citing Tex. Lab. Code § 410.301(a)); *Deleon v. Royal Indem. Co.*, 396 S.W.3d 597, 600 (Tex. App.—Austin 2010), *rev'd on other grounds*, 396 S.W.3d 527 (Tex. 2012). The appealing party has the burden of proof by a preponderance of the evidence. Tex. Lab. Code § 410.303; *Deleon*, 396 S.W.3d at 600; *Texas Builders Ins. Co. v. Molder*, 311 S.W.3d 513, 518 (Tex. App.—El Paso 2009, no pet.). In conducting such a case:

> (1) the trial court is informed of the TWCC Appeals Panel's decision; (2) evidence of the extent of impairment is limited to that presented to the TWCC, unless the court makes a threshold finding that the claimant's condition has substantially changed; and (3) the court is required to adopt the specific impairment rating arrived at by one of the physicians in the case.

*Molder*, 311 S.W.3d at 518; *see Deleon*, 396 S.W.3d at 600-01 ("Evidence of the extent of impairment is limited to that presented to the Division absent a finding that the claimant's condition has substantially changed, and the court can only adopt a specific impairment rating arrived at by one of the doctors in the case."). "The fact finder, although informed of the [appeals panel] decision, does not review it for 'reasonableness,' but rather independently decides the issues by a preponderance of the evidence." *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 531 (Tex. 1995); *see Deleon*, 396 S.W.3d at 600-01 (fact finder

7

considers administrative decision but need not give it any particular weight, nor is opinion of "designated doctor regarding impairment" given special weight).

We review the trial court's granting of summary judgment de novo, taking as true all evidence favorable to the non-movant, indulging every reasonable inference in his favor, and resolving any doubts in his favor. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017). When a party moves for both traditional and no-evidence summary judgments, we consider the no-evidence motion first because if the non-movant did not produce evidence raising a genuine issue of material fact as to the challenged elements, a no-evidence summary judgment is proper and there is no need to address the challenge to the traditional motion. *Id.* at 219-20. Any claims that survive the no-evidence review are reviewed under the traditional standard, asking whether the movant proved that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 220 (citing Tex. R. Civ. P. 166a(c)). "A genuine issue of material fact exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions,'" and the evidence must do more than create a mere surmise or suspicion of the fact. *Id.* (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

As for summary-judgment procedure, a non-movant must file his response, along with the evidence on which he seeks to rely, at least seven days before the summary-judgment hearing or obtain the trial court's leave to file it late. Tex. R. Civ. P. 166a(c), (d). We review a trial court's ruling on whether to accept a late response for an abuse of discretion. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 686 (Tex. 2002); *Bierwirth v. TIB*, No. 03-11-00336-CV, 2012 WL 3239121, at *3 (Tex. App.—Austin Aug. 10, 2012, no pet.) (mem. op.). We also review a trial court's decisions related to the admission or exclusion of evidence for an

abuse of discretion. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Id.*

## DISCUSSION

In Childress's briefing, he asserts that the trial court erred in refusing to admit certain documents into the record; in not allowing ACE Fab to proceed as a party or bringing its claims for breach of contract or statutory violations; and in affirming the Appeals Panel's decision, contending that the Decision and Order "is clearly against the great weight and preponderance of the evidence."[2] He asks this Court to render judgment that he has a 7% IR and to declare his date of MMI as July 25, 2016, as recited in a report by Dr. Van Beest, and seems to seek a declaration of disability starting on August 18, 2017. Finally, he asks that we remand the case for the trial court to address his claims for breach of contract and statutory violations.

*Evidentiary Rulings*

Texas Mutual filed its motion for summary judgment in January, and the motion was heard by the trial court on March 14. Childress filed his first response on March 6, attaching three hundred pages of exhibits, some of which were his own pleadings, and in contesting his date of MMI or his IR, he states only, "The preponderance of the other medical evidence herein is to the contrary. See Cease and Desist attached herein. This court should take judicial notice

---

[2] Childress's briefing is somewhat difficult to follow. He states his issues as being: (1) "Did the Trial abuse its discretion by exclusion of critical evidence to prove a fact," and (2) "Is this a case of First Impression where it set forth a completely original issue of law for a decision by the trial court and did the trial court error prevent appellate from properly presenting the case to the court of appeals." We will attempt to address Childress's arguments as fairly and thoroughly as we can, but we must also apply the same rules as we would if he were represented by counsel. *See Veigel v. Texas Boll Weevil Eradication Found., Inc.*, 549 S.W.3d 193, 195 n.1 (Tex. App.—Austin 2018, no pet.).

of such pleadings attached with attached evidence herein." On the date of the hearing, he filed two affidavits referring to exhibits that he intended to use for summary judgment and attaching forty-seven pages of documents without any explanation of their relevance.[3] He also filed a second response, a second supplemental response, and a third supplemental response. In his second response, Childress stated that his March 6 response had a "clerical error" and asked to amend that error. He also asked for "Leave of Court pursuant to" rule 166a(c) as follows: "DWC 15315468 filed returned incomplete, completed and sent back overnight 3-11-19. DWC 15315468 sent from the Texas Department of Insurance 2-08-18 if necessary, to stand in the shoes of DWC 15315483 resubmitted 3-11-2019."

Although it is not entirely clear, it appears that Childress is arguing that the underlying administrative record was wrongfully excluded from evidence. However, in the November 2018 hearing on Texas Mutual's special exceptions, the trial court explained to Childress that to file the administrative record, he had to review and follow the rules of evidence related to governmental documents. It does not appear that Childress arranged to have the record filed in accordance with those rules. Further, it is unclear exactly what evidence Childress wanted admitted and how it would have been necessary to his case.[4] *See State v. Central*

---

[3] Childress's first affidavit refers to "EXHIBITS LIST A-X," and the second refers to "EXHIBITS LIST, L." Exhibit L—included in the clerk's record as having been attached to the affidavit—consists of several documents filed with the Division well after the ALJ's hearing in September 2017. The clerk's record does not include Exhibits A through X, and according to Childress's exhibit list, those exhibits total about 270 pages plus an unspecified number of pages contained in two exhibits described as "Court Records" for two Division cases.

[4] We also note that the trial court was tasked with conducting a de novo review in which the evidence of the extent of impairment is limited to that presented in the administrative case. *Deleon v. Royal Indem. Co.*, 396 S.W.3d 597, 600-01 (Tex. App.—Austin 2010), *rev'd on other grounds*, 396 S.W.3d 527 (Tex. 2012). It is not clear whether Childress sought to introduce the parties' competing medical reports, but the ALJ's opinion, summarizing the content of those

*Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009) (complaining party must show that exclusion of evidence probably resulted in rendition of improper judgment). On this record, we cannot conclude that the trial court abused its discretion in excluding evidence. We overrule Childress's arguments related to the trial court's evidentiary rulings.

*ACE Fab as Would-Be Party*

Childress complains of the trial court's rulings barring ACE Fab from proceeding as a party and bringing claims for breach of contract or statutory violations. He insists that ACE Fab could not have been a party to the administrative proceeding because the "Division of Workers Compensation does not have jurisdiction over Contract law" and that it should have been allowed to join the proceeding in the trial court to pursue its non-benefits-related claims. However, the proceeding before the trial court was a suit for judicial review. Such a proceeding is brought by a party "that has exhausted its administrative remedies under this subtitle and that is aggrieved by a final decision of the appeals panel," Tex. Lab. Code § 410.251, and it is "limited to issues decided by the appeals panel and on which judicial review is sought," *id.* § 410.302(b). ACE Fab was not a party to the contested case—that addressed which of Childress's injuries were compensable, when he reached MMI, the IR that should be assigned, and whether he had disability after September 2, 2016—and is not aggrieved by Childress's benefits decision. *See Just Energy Texas I Corp. v. Texas Workforce Comm'n*, 472 S.W.3d 437, 443 (Tex. App.—Dallas 2015, no pet.). ACE Fab's claims against its insurance carrier for breach of contract or statutory violations were not a part of the contested case, nor could they have been, and they therefore cannot be raised in this suit for judicial review, which has a limited

___

reports relevant to Childress's injuries and impairment, provided the trial court with the information relevant for its de novo evaluation of the issues.

11

scope. *See* Tex. Lab. Code § 410.302(b); *State Office of Risk Mgmt. v. Martinez*, 539 S.W.3d 266, 274 (Tex. 2017) ("issues" identified by administrative review officer "remain the same through hearing, appeal, and judicial review"). Because the trial court could only address compensability, MMI, and IR, it correctly disallowed ACE Fab as a party as well as its contract- and statute-based claims. We overrule Childress's claims related to ACE Fab as a party.

*Affirmance of Appeals Panel Decision*

Finally, we consider whether the trial court properly granted summary judgment affirming the Appeals Panel's decision.

As noted by Texas Mutual in its special exceptions, motion for summary judgment, and appellate brief, Childress's amended petition seems only to assert a claim for negligence, contending that Texas Mutual knowingly violated provisions of the insurance code, labor code, and administrative code and that as a result, Childress suffered an "under treated, under diagnosed, under documented biceps and shoulder injury which produced by causation the manifestly unjust [ALJ's] Decision and Order, Independent Injury actual damages, Physical harm on 1-24-17 a new injury as a direct result of one or more of the above stated violations." He therefore arguably abandoned his request for judicial review of the Appeals Panel's decision. However, construing his pleadings liberally and in the interest of justice, we will consider whether Texas Mutual showed itself entitled to a summary judgment affirming the Appeals Panel's order.

Childress, as the party challenging the decision, had the burden of proving by a preponderance of the evidence that the decision should be overturned. *See* Tex. Lab. Code § 410.303; *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 516 (Tex. 2007). The issues

12

before the trial court were whether Childress's supraspinatus tear was part of his compensable injury; whether he had reached MMI and, if so, when; if he had reached MMI, his IR; and whether he had disability after September 2, 2016, and Texas Mutual's no-evidence motion required Childress to put on evidence to rebut the Appeals Panel's decision on those issues.

In the portion of Childress's summary-judgment response addressing the extent of his compensable injury, he referred to reports by Drs. Van Beest, Goodman, and Vu and stated:

> The great weight and substantial medical records, Plaintiff inserts [sic] the four doctors is by all standards have established the burden of proof and should have presumptive weight. Plaintiff asserts this fact has great weight and is controlling. [Texas Mutual's] argument is plainly erroneous and is inconsistent with the facts. The preponderance of the other medical evidence herein is to the contrary. See Cease and Desist[5] attached herein[.] This court should take judicial notice of such pleadings attached with attached evidence herein.

As to the issues of MMI and IR, Childress stated:

> The claimant received improper and inadequate treatment leading to a under diagnosed and under documented bicep's injury, and shoulder torn tendon. Critical evidence and the factual sufficiency of the evidence presented in relation to; Impairment, MMI. The preponderance of the other medical evidence herein is to the contrary. See Cease and Desist attached herein. This court should take judicial notice of such pleadings attached with attached evidence herein.

Finally, as to disability, Childress referred to a report by Designated Doctor Daniel Lerma in September 2018, which Childress said "disputed" the ALJ's finding as to disability and which he

---

[5] Childress's main summary-judgment exhibit was a "Claimant Request for Review Tex Lab Code § Sec 415.0211, Emergency Cease and Desist Order," which he apparently filed with the Division in March 2019. That document includes twenty-two exhibits, along with a list providing a page count (the documents range from one to thirty-three pages long) and a description (such as "Right Bicep," "Denial," Interlocutory Order," "Wage Statement," "Bolte," "Added Issues," and "Response First Supplemental Answer to [Amended] Original") for each of those exhibits.

asserted should be given "presumptive weight."[6] He also stated, "Statutory dates are 6-22-16 to 8-18-17. Material fact. This court should take judicial notice of such pleadings attached with attached evidence herein." Childress included an affidavit stating that he was attaching 285 pages of records that were "the original records or exact duplicates" and that the records "were made at or near the time of each act, event, condition, opinion, or diagnosis set forth" and were kept as part of ACE Fab's business records. He then attached over 300 pages of documents, which included his own pleadings; photographs of his arm (apparently taken in 2018); ACE Fab's sales tax permit; Texas Mutual's quote for ACE Fab's workers' compensation insurance; Dr. Clark's report; Texas Mutual's form disputing the compensability of the supraspinatus tear; several pages of medical records with handwritten notes on them; MRI reports and a summary of some of those results; a report made after Childress's December 2015 surgery to repair his biceps tendon; reports by Drs. Van Beest, Goodman, and Vu; documents showing poor online reviews for Dr. Bolte; Dr. Lerma's September 2018 Designated Doctor report; and medical records and reports pertaining to a January 2017 injury to his left shoulder.

As our sister court has explained, "When faced with a no-evidence motion for summary judgment, a nonmovant cannot avoid judgment by simply filing voluminous evidence and stating generally that a genuine fact issue has been raised." *Kimbrell v. Memorial Hermann Hosp. Sys.*, 407 S.W.3d 871, 878 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Burns v. Canales*, No. 14-04-00786-CV, 2006 WL 461518, at *5–6 (Tex. App.—Houston [14th

---

[6] In September 2018, the Division assigned Dr. Lerma to examine Childress to determine his "Return to Work Status" from September 2, 2016, through the date of the exam and his "Disability" from October 2, 2017, through the date of the exam. However, the ALJ's Decision was made after considering a report by Dr. Clark as Designated Doctor, not Dr. Lerma, whose examination occurred about nine months after Childress filed his suit for judicial review. Thus, it appears Childress was granted permission to seek a change to his status, but we have no information about what has transpired in the Division since Dr. Lerma's exam and report.

Dist.] Feb. 28, 2006, pet. denied) (mem. op.) (response to no-evidence motion lacked argument and citation to evidence or authority and attached 122 pages of evidence; "The number of pages, however, is not dispositive. The issue is whether the trial court must search through all of the non-movant's evidence to determine if a fact issue exists without any guidance concerning what evidence creates an issue on a particular element."). "Mere reference to attached evidence is insufficient to avoid" a motion for no-evidence summary judgment, and the non-movant "bears the burden to file a written response that raises issues preventing summary judgment, and that points to evidence supporting those issues. Where the nonmovant fails to meet that burden, the trial court is not required to supply the deficiency, but instead must grant the motion." *Burns*, 2006 WL 461518, at *5-6.

Although we have attempted to read Childress's pleadings liberally and with patience, we cannot grant him so much leeway as to give him a procedural advantage we would not extend to a party represented by counsel. *See id.* at *6; *Holt v. F.F. Enters*., 990 S.W.2d 756, 759 (Tex. App.—Amarillo 1998, pet. denied). Childress did not present understandable argument as to how there was a genuine issue of material fact, nor did he point to evidence or authority to support any such argument. We must hold, therefore, that Childress did not meet his burden to explain to the trial court how his attached evidence raised a fact issue as to each element challenged by Texas Mutual. *See Fagerberg v. Steve Madden, Ltd.*, No. 03-13-00286-CV, 2015 WL 4076978, at *5 & n.8 (Tex. App.—Austin July 3, 2015, pet. denied) (mem. op.) (in response to no-evidence motions, party made vague statements about effect of deposition testimony that, along with "mere 'incorporation' of evidence" without explanation of how it raised fact issue, were insufficient to defeat motions; although attached evidence was not voluminous, non-movant still had burden of raising fact issue, but "not only did he not specify

15

where the court should look to find the asserted material issues of fact, he did not refer to the evidence, attempt to explain how the evidence raised such questions, or otherwise connect the evidence to the challenged elements"); *Burns*, 2006 WL 461518, at *5-6 ("Burns's written response to the motion for summary judgment contains no argument, and cites to neither evidence nor authority."); *Cargill, Inc. v. Merit Distrib. Servs., Inc.*, No. 03-02-00718-CV, 2003 WL 21241642, at *3 (Tex. App.—Austin May 30, 2003, no pet.) (mem. op.) (response to no-evidence motion was insufficient where it listed specific affidavits and asked that they be "filed of record" but "presented no argument or explanation that makes reference to any evidence"). The trial court therefore did not err in granting Texas Mutual's motion for no-evidence summary judgment, and we overrule Childress's arguments to the contrary.

## CONCLUSION

Having overruled Childress's arguments on appeal, we affirm the trial court's order granting Texas Mutual's motion for summary judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed

Filed: August 27, 2020

16